UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANK L. CALABRESE,

    Plaintiff,

v.

JOHN PASTORELLO,

    Defendant.

No. 14 C 9684

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Frank L. Calabrese, an attorney representing himself and a resident of Illinois, alleges that John Pastorello ("Pastorello"), a resident of California, tortiously interfered with Calabrese's attorney-client contract and business relationships with two former clients in violation of Illinois law. *See* R. 1-2. Pastorello removed this case from state court based on diversity jurisdiction because Calabrese alleges $50,000 in damages for each count of his three count complaint. *See* R. 1. Pastorello has filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* R. 23. For the following reasons, Pastorello's motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to

provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

Since 2008 and 2006 respectively, Calabrese provided legal advice to Mariano Pastorello ("Mariano")[1] and to Mariano's business Milano Flor Mount Square, Inc., ("Milano"), both pursuant to verbal agreements. R. 1-2 at 2 (¶¶ 3-4). Calabrese also served on Milano's board of directors since January 2009. *Id.* at 6 (¶ 30).

Mariano became ill in May 2013, and passed away on June 21, 2013. *Id.* at 2-3 ¶¶ 4-6. When Mariano became ill he gave power of attorney over his personal and

---

[1] Mariano is either Pastorello's brother, *see* R. 24 at 1, or step-brother, *see* R. 27 at 2 (¶ 4). Calabrese is Mariano's nephew. *See* R. 1-2 at 6 (¶ 36).

2

business affairs to Pastorello. *See* R. 24-2.[2] This gave Pastorello control of Milano since Mariano was the company's sole shareholder. *See* R. 24-1. On June 7, 2013, two weeks before Mariano died, Pastorello signed—on behalf of Mariano and Milano—an "Engagement Agreement" with Calabrese to provide legal advice to Mariano and Milano. *See* R. 1-2 at 8-9. After Mariano died, Pastorello was named executor of Mariano's estate. *See* R. 24-3.[3] Pastorello continued to give legal work to Calabrese through at least June 26, 2014. *See* R. 27-1.

On July 8, 2014, Pastorello was served with a complaint Calabrese filed against Pastorello as executor of Mariano's estate in Los Angeles Superior Court on June 17, 2014, *see* R. 27-1 at 2, titled "Complaint of Breach of Oral Contract to Make a Will." *See* R. 1-2 at 3 (¶ 11); R. 24-5. On September 27, 2014, Pastorello sent Calabrese a letter stating that Calabrese had been "removed from the Board of Directors of Milano . . . by the duly adopted resolution of the sole Shareholder, and . . . removed as an Officer of the corporation by resolutions duly adopted by the newly constituted Board of Directors." R. 1-2 at 12. Pastorello, who signed the letter as

---

[2] Pastorello attached to his brief in support of his motion the power of attorney Marino executed. The Court properly considers this document on a motion to dismiss because Calabrese referenced Pastorello's power of attorney in the complaint. *See* R. 1-2 at 2 (¶ 3); *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim.").

[3] Pastorello attached a certified copy of the document appointing him to be administrator of Mariano's estate. The Court properly considers this document on a motion to dismiss because Calabrese referenced Pastorello's position as administrator of Mariano's estate in the complaint. *See* R. 1-2 at 3 (¶ 11), 5 (¶ 24), 6 (¶ 34); *see Brownmark Films*, 682 F.3d at 690.

Milano's "President," also stated, "I hereby remove you as the corporation's attorney." *Id.*

Calabrese alleges that Pastorello (1) tortiously interfered with Calabrese's engagement agreement with Milano when Pastorello terminated that agreement (Count I); tortiously interfered with Calabrese's advantageous business relationship with Milano when Pastorello terminated that agreement (Count II); and (3) tortiously interfered with Calabrese's advantageous business relationship with Milano when Pastorello removed him as an officer and director (Count III).[4] Calabrese alleges that "Pastorello's interference was intentional and unjustified," R. 1-2 at 5 (¶ 28), and "willful, wanton, [and] knowing and in response to . . . [the] lawsuit [Calabrese] filed against . . . Pastorello." *Id.* at 4 (¶ 17). Calabrese also alleges that he "has suffered damages in that he no longer is allowed to represent Milano," *id.* at 5 (¶ 27), and "he no longer is allowed to participate in decisions affecting the business of Milano." *Id.* at 4 (¶ 37). In his brief, Calabrese also contends that he "has suffered damages in that he is not allowed to participate in the Medical Health Reimbursement Plan he drafted." R. 27 at 10 (¶ 42).

## Analysis

Pastorello makes the following arguments in support of his motion to dismiss: (1) Calabrese's agreements with Milano were at-will, and their cancellation is not a sufficient basis to state a claim for tortious interference with contract; (2) Pastorello

---

[4] Calabrese also appears to allege that Pastorello tortiously interfered with his contractual agreement and business relationship with Mariano. However, since Mariano passed away before Pastorello terminated any contract or business relationship Calabrese had with Mariano, any such claim is dismissed.

4

did not act with "actual malice" in cancelling Calabrese's engagement agreement; and (3) Calabrese did not suffer damages by being removed as a Milano director.

**Count I:     Tortious Interference with Contract**

Calabrese "does not dispute" that the "relationship between an attorney and client is terminable at will." R. 27 at 3. He contends instead that "Pastorello is not the client, and has never been [Calabrese's] client," *id.*, apparently in an effort to argue that Pastorello did not have the authority to terminate Calabrese's engagement agreement with Milano. But the question of who had the authority to terminate Calabrese's engagement agreement with Milano is beside the point. Calabrese cannot allege a breach of his engagement agreement because it was terminable at will. *See Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) ("A major deficiency in Cody's complaint is that he cannot plead facts to show a breach of . . . contract, because the [agreements at issue] were terminable at will. Under Illinois law, a defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations."). Since the agreement could be terminated at will, Calabrese did not have an enforceable contractual right for the agreement to continue. Without a continuing contractual right, causing the agreement to end cannot constitute interference with the contract. *See Prudential Ins. Co. of Am. v. Sipula*, 776 F.2d 157, 162 (7th Cir. 1985) ("An extended discussion of [tortious interference with contractual relations] is unnecessary, however, because an essential element, i.e., [the defendant's] inducement of a *breach* . . . is conspicuously absent in [the

5

plaintiff's] allegations. [The plaintiff] in fact concedes that no breach occurred, because the whole-life policies at issue could be terminated by the policyholders for any reason. Thus, [the plaintiff] has no cause of action . . . .") (emphasis in original).[5] Accordingly, Pastorello's motion to dismiss is granted with respect to Count I.

**Count II:    Tortious Interference with an Advantageous Business Relationship as an Attorney[6]**

Although under Illinois law "[a]n action for tortious interference with contractual relations is not the proper vehicle for a discharged [at-will] attorney seeking to recover damages," such an action "is classified as one for intentional interference with prospective economic advantage." *Canel and Hale, Ltd. v. Tobin*, 710 N.E.2d 861, 871 (Ill. App. Ct. 1st Dist. 1999). "To succeed in an action for tortious interference with prospective economic advantage under Illinois law, the plaintiff must prove: (1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007). The

---

[5] Calabrese contends that the *Prudential Insurance* case and other cases Pastorello has cited for the same legal proposition are inapposite because they address factual scenarios different from the facts at issue here. *See* R. 27 at 5. Certainly, different factual scenarios can sometimes be used to distinguish the relevance of particular cases. But in this instance, Calabrese merely points out superficial differences in the facts, and fails to explain how these differences destroy the relevance of the legal principles on which the Court's holding is based.

[6] "In Illinois, the terms 'tortious interference with business relations' and 'tortious interference with prospective economic advantage' are interchangeable." *James v. Intercontinental Hotels Group Resources, Inc.*, 2010 WL 529444, at *3 (N.D. Ill. Feb. 10, 2010) (citing *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991)).

Illinois Supreme Court has limited this cause of action to "cases of 'outsiders intermeddling maliciously in the contracts of affairs of other parties.'" *Id.* (quoting *Fellhauer*, 568 N.E.2d at 879). Thus, "corporate . . . officers enjoy immunity from these types of claims [concerning employment decisions] provided they took the action in pursuit of the legitimate interests of the company." *Ali*, 481 F.3d at 945 (citing *Swager v. Couri*, 395 N.E.2d 921, 927-29 (Ill. 1979)).

Calabrese argues that Pastorello "is not [his] client" but is a "third party." R. 27 at 7. This conclusion appears to be based on Calabrese's implicit allegation that Pastorello's authority to control Milano is not legitimate. *See* R. 1-2 at 3 (¶ 5) ("Pastorello had no prior business relationship with [Mariano] or with Milano . . . until [Mariano] became seriously ill . . . and was admitted to the [hospital]. At that time [Pastorello] began to take over [Mariano's] personal and business affairs and made himself office manager without the approval of the Board of Directors or the Officers of the Corporation as required by the Milano . . . by laws."). Despite this insinuation, however, Calabrese's complaint acknowledges that Pastorello is the administrator of Mariano's estate. *See* R. 1-2 at 3 (¶ 11), 5 (¶ 24), 6 (¶ 34). In that capacity, Pastorello controls Milano, which is part of Mariano's estate. *See* R. 24-1. Moreover, Calabrese alleges that Pastorello signed the engagement agreement on behalf of Milano and that Pastorello gave Calabrese legal work to do on behalf of Milano. *See* R. 1-2 at 8-9. It is clear from these allegations and facts that Calabrese admits that Pastorello has sufficient authority over Milano to terminate Calabrese's engagement agreement with Milano.

7

Despite Pastorello's authority to fire Calabrese on behalf of Milano, Calabrese argues that he has stated a claim for tortious interference because Pastorello's action was "an intentional act in response to [Calabrese] filing" a lawsuit challenging Marino's will, R. 27 at 8, which was "solely for the purpose of harming [Calabrese]." *Id.* at 9. This allegation is insufficient for the Court to reasonably infer that Pastorello did not fire Calabrese "in pursuit of the legitimate interests of the company." *Ali*, 481 F.3d at 945. Calabrese's lawsuit challenged Pastorello's role as administrator of Mariano's estate, and thus directly challenged the basis for Pastorello's authority to control Milano. Calabrese was functioning as Milano's outside counsel. He cannot effectively perform that role if he does not believe that Pastorello's authority to control Milano is legitimate. It was entirely reasonable for Pastorello to fire Calabrese under such circumstances, and it is not plausible to infer that such a decision was contrary to the "legitimate interests of the company."[7] Accordingly, Pastorello's motion to dismiss is granted with respect to Count II.[8]

---

[7] Calabrese cites *Cress v. Recreation Services, Inc.*, for the proposition that "a plaintiff who claims that the defendant's conduct exceeded the qualified privilege for corporate officers need not plead and prove that the defendant's conduct actually harmed the corporation." 795 N.E.2d 817, 843 (Ill. App. Ct. 2d Dist. 2003). The Court acknowledges that such a pleading is not required, but this does not change the Court's analysis that Calabrese has failed to allege that Pastorello was not acting "in pursuit of the legitimate interests of the company." Furthermore, *Cress* concerned an employment contract that contained a specific termination provision and so was not at-will as Calabrese's agreements were in this case. *See id.* at 839-40.

[8] Calabrese also repeatedly argues that Pastorello "never once complained or expressed dissatisfaction with [Calabrese's] legal research and drafting." *See* R. 27 at 5. Calabrese does not make such allegations in his complaint. In any event,

**Count III:   Tortious Interference with as Advantageous Business
             Relationship as an Officer and Director**

The Court's analysis with respect to Count II applies equally to Calabrese's claim for tortious interference with prospective economic advantage based on Pastorello's decision to remove Calabrese as a director. Thus, Count III is dismissed as well.

**Conclusion**

For the foregoing reasons, Pastorello's motion, R. 23, is granted, and Calabrese's complaint is dismissed without prejudice. Calabrese is granted leave to file an amended complaint if he can cure the deficiencies described in this opinion and order by May 27, 2015.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  April 22, 2015

---

considering the action Calabrese took to file a lawsuit challenging Pastorello's authority to run Milano, this allegation is beside the point.